COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

WESTERN SKIES PARTNERSHIP/                   )

PHYSICIAN=S HEALTHCARE                           )

ASSOCIATES, L.C., and
PHYSICIAN=S            )

HEALTHCARE
ASSOCIATES, P.A.,                  )              
No.  08-02-00231-CV

                                                                              )

Appellant/Cross-Appellees,            )                    Appeal from the

                                                                              )

v.                                                                           )                
34th District Court

                                                                              )

PHYSICIAN=S HEALTHCARE                           )            of El Paso County, Texas

ASSOCIATES, L.C., and
PHYSICIAN=S            )

HEALTHCARE ASSOCIATES, P.A./                  )                    (TC# 96-3096)

WESTERN SKIES PARTNERSHIP,                   )

                                                                              )

Appellees/Cross-Appellant.            )

 

 

MEMORANDUM  OPINION

 

This is a
commercial lease dispute.  Western Skies
Partnership (AWestern
Skies@) and
Physician=s
Healthcare Associates, L.C., and Physician=s
Healthcare Associates, P.A. (APHA@) appeal and cross-appeal respectively
from a jury finding that they both breached the lease.  The jury awarded neither side any
damages.  PHA cross-appeals the trial
court=s
decision to award no money damages to either party.  In this appeal, Western Skies raises four
issues and PHA raises one issue.  We have
combined the issues to be:  

(1)        The trial abused its discretion in
allowing the tenant to offer proof that the landlord effectively mitigated any
damages it would have otherwise suffered as a result of the tenant=s breach;

 








(2)        the trial court
erred in denying the landlord=s
motion for instructed verdict and submitting the question of the landlord=s breach of the lease to the jury;

 

(3)        the trial court abused its discretion in
denying the landlord=s
request, made at the conclusion of the evidence, to amend its pleading to
assert the affirmative defense of excuse; and

 

(4)        who was the
prevailing party in the suit?

 

We affirm.

On March 15, 1994,
Western Skies and PHA entered into a commercial lease agreement.   The term of the triple-net lease was seven
years with a monthly rent of $2,563.  The
property required remodeling and Western Skies agreed to have his improvements
done by an agreed date in 1994.  PHA was
to occupy the premises within 120 days of being notified by Western Skies that
the premises were available.  The lease
included a clause that stated:  ATermination of this Lease shall be
Tenant=s
exclusive remedy in the event of failure of Landlord for any reason whatsoever
to complete construction or to have the premises ready for performance of
Tenant=s work
within the period herein provided.@  There was a ATime
of Essence@ clause.

As required, PHA
paid a $2,500 deposit to Western Skies on the day the lease was signed.   Western Skies did not contract anyone about
doing the improvements on the property until April 27, 1994, a month after
the lease had been signed; the actual work did not begin until May 6,
1994.








That same month,
May 1994, Western Skies suspected that PHA was not going to move into the
premises and, in July 1994, Pete Sellers, the real estate broker who brokered
the deal informed Western Skies that PHA was not going to occupy the
premises.  Mr. Sellers provided Western
Skies with a proposal from Kenny Rogers Roasters franchise to Asub-lease@
the premises.

Western Skies
never provided PHA with notice that the improvements were complete as required
by the lease, but Mr. Samuels testified that notice was not necessary because
PHA knew that by July 2, 1994, the improvements had been completed.

On December 20,
1995, Western Skies entered into a new lease with Souper
Salad to occupy the premises.  The new
lease was for a term of ten years and called for an annual rent of $38,750.25,
which would increase to $44,552.20 in the sixth year of the lease and a percentage
of gross receipts.

Wester Skies filed a lawsuit to recover damages caused by
PHA=s breach of the lease.  PHA denied Western Skies= allegation and filed a
counterclaim.  At trial, the jury found
that both parties had breached the lease and refused to award any party
damages.  Both Western Skies and PHA
filed a motion to disregard jury finding and for judgment in their favor.  The trial court denied both motions and
entered a judgment reflecting the jury=s
findings.  Both parties filed a motion
for new trial which the trial court denied.

DISCUSSION








In Issue One,
Western Skies argues that the trial court abused its discretion in admitting
the evidence provided by David Lindau on the grounds
that it was not relevant.  As an
extension to this argument, Western Skies argues that since PHA failed to prove
that Western Skies failed to mitigate its damages, the instruction following
Question 3 was improper.[1]  PHA argues that Mr. Lindau=s testimony was relevant to the issue
of Western Skies= duty to
mitigate damages. 

Under Texas law, a
landlord has a duty to make reasonable efforts to mitigate damages when a
tenant defaults on the lease; the tenant bears the burden of proof to
demonstrate that the landlord has mitigate or failed to mitigate damages and
the amount by which the landlord reduced or could have reduced its
damages.  See Austin
Hill Country Realty, Inc. v. Palisades Plaza, Inc., 948 S.W.2d 293, 294,
299 (Tex. 1997).  Under Tex.R.Evid. 410, evidence is relevant if
it has any tendency to make the existence of any fact that is of consequence to
the determination of the action more probable or less probable than it would be
without the evidence.








Mr. Lindau, a certified public account, testified as to the
comparison of the present day value of the PHA and Western Skies lease, and the
Souper Salad and Western Skies lease.  He also testified as to the value of income
stream of each lease.  The Appellant
objected, but the trial court overruled the objection stating that it felt that
the Souper Salad lease was relevant on the mitigation
issue.  In this case, we agree with the
trial court that Mr. Lindau=s
testimony was relevant to the issue of mitigation and therefore
admissible.  See Tex.R.Evid. 410; Austin Hill Country Realty,
Inc., 948 S.W.2d at 299.  We overrule Issue One.

In Issue Two,
Western Skies argues the trial court erred in denying its Motion for Directed
Verdict regarding PHA=s
counterclaims.  Western Skies argues that
Section 3(b) of the lease which stated that the A[t]ermination of this Lease shall be Tenant=s exclusive remedy in the event of
failure of Landlord for any reason whatsoever to complete construction or to
have the premises ready for performance of Tenant=s
work within the period herein provided,@
was the exclusive remedy available to PHA. 
Western Skies further states that PHA never terminated the lease, but
instead, it chose to attempt to sublet the property, which Western Skies argues
is inconsistent with PHA=s
contention at trial that the premises were not ready for it to do its work and
therefore the lease was never commenced. 
Western Skies contends that since PHA never pled the exclusive remedy
provision or any other provision in the lease was unambiguous, the construction
of the lease becomes a matter of law.  See Vandergriff Chevrolet Company,
Inc. v. Forum Bank, 613 S.W.2d 68, 70 (Tex.Civ.App.--Fort
Worth 1981, no writ).








An appeal from the
denial of a motion for directed verdict is essentially a challenge to the legal
sufficiency of the evidence.  Kershner
v. State Bar of Texas, 879 S.W.2d 343, 346 (Tex.App.--Houston
[14th Dist.] 1994, writ denied). 
Therefore, we must review the denial of a directed verdict by
considering all the evidence in the light most favorable to the nonmovant, disregarding all evidence to the contrary, and
resolving all reasonable inferences in favor of the nonmovant.  Russell v. City of Bryan,
919 S.W.2d 698, 705 (Tex.App.--Houston [14th Dist.]
1996, writ denied).  To reverse
the denial of a motion for directed verdict, the appellant must show the
evidence conclusively proves a fact that establishes appellant=s right to judgment as a matter of law
and there is no evidence to the contrary. 
Weidner v. Sanchez, 14 S.W.3d 353, 373 (Tex.App.--Houston [14th Dist.] 2000, no pet.).

Having reviewed
the entire record in the light most favorable to the nonmovant,
we find that PHA did in fact raise the issue of the lease=s ambiguity.  In its supplemental answer and special
exceptions filed on November 1, 2001, PHA raised the lease=s ambiguity as an affirmative
defense.  The trial court also held that
the term Aas agreed
1994@ made
that section of the lease ambiguous.  The
presence of such conflicting evidence establishes that an instructed verdict
would be improper and that Western Skies failed to establish its right to a
judgment as a matter of law.  See
Weidner, 14 S.W.3d at 373.  Issue Two is overruled.

In Issue Three,
Western Skies argues that the trial court abused its discretion by denying its
request for leave of the court to file a trial amendment to assert the
affirmative defense of excuse.  Citing Greenhalgh v. Service Lloyds Ins., Co.,[2]
PHA contends that Western Skies was proposing to assert a new defense and that
therefore the amendment was presumptively prejudicial to PHA.  We agree.








Under
Tex.R.Civ.P. 63, a trial court should grant
an amendment unless the opposite party shows that filing the amendment operates
as a surprise.  See Tex.R.Civ.P. 63. 
A trial court has no discretion to refuse an amendment unless:  (1) the opposing party presents evidence of
surprise or prejudice; or (2) the amendment asserts a new cause of action or
defense and thus is prejudicial on its face, and the opposing party objects to
the amendment.  See Greenhalgh, 787 S.W.2d at 939.  The burden of showing an
abuse of discretion lies on the party complaining of the trial court=s refusal to consider an amended
pleading.  See Hardin v. Hardin,
597 S.W.2d 347, 349 (Tex. 1980).  The trial court=s
ruling will not be disturbed unless the complaining party shows an abuse of
discretion.  Hardin, 597 S.W.2d at 349-50.

The lawsuit was
filed on August 15, 1996, and PHA filed its original counterclaim on February
14, 1997.  In its pleading, PHA raised
the issue of Western Skies=
failure to perform the landlord=s
work as required by the lease.  PHA
repeated these allegations in its successive allegations.  Western Skies answered and specially excepted to the counterclaim in September of 1997.  Western Skies never alleged excuse for its
breach of the lease.  It was not until
November 2001, five days into the trial, after both sides had rested and
closed, that Western Skies moved to amend its answer.  Western Skies has made no showing as to why
this new affirmative defense could have not been added earlier.  In this case, the amended pleadings would
assert for the first time the affirmative defense of excuse.  As such, the pleadings established surprise
as a matter of law and is simply no abuse of discretion in refusing the
amendment.  Issue Three is overruled. 

In Issue Four,
each side asserts that it is the prevailing party in this suit.  PHA asserts that it is the prevailing party
on the grounds that Section 38 of the lease does not speak to the prosecution
or defense of a counterclaim.  Focusing
on the word Abrought,@ PHA asserts that Western Skies was the
party that brought the lawsuit and as such, PHA is the prevailing party because
the suit was brought by Western Skies.








In its brief,
Western Skies relies on the opinion issued by this Court in Bacchus
Industries, Inc.[3]  We find that Bacchus Industries, Inc.
is distinguishable from the case at hand. 
In Bacchus Industries, Inc., the trial court awarded money
damages to one of the parties.  See Bacchus Industries, Inc., 36 S.W.3d at 580.  Additionally, as asserted by PHA, Bacchus
Industries, Inc. is not applicable in this case because it addressed the
issue of recovery of attorney=s
fees by statute and not contract.  See
id. at 586.

We have not found
any supporting case law and the parties likewise concede that they have not
found any either.  So, what we have is
that the jury found that both sides breached a contract and neither deserved
any damages.  Based on the jury findings,
we find that there are only losers in this case and that neither party is
entitled to attorney=s
fees.  We overrule Western Skies=s Issue Four and PHA=s counterclaim.  

We affirm the
trial court=s
judgment.

 

May
13, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.











[1]
Question 3:  What sum of money, if any,
if paid now in cash, would fairly and reasonably compensate Western Skies
Partnership for its damages, if any, that resulted from such failure to comply?

 

Consider the following elements of
damage, if any, and none other.

Loss of Rentals:

 

Those
rentals which would have been paid pursuant to the lease.  

 

Amount:  $ 0

 

Incidental Damages:

 

Those costs incurred
by Western Skies Partnership to prepare the space for PHA=s work.

 

Amount:  $ 0

 

Mitigation Expenses:

 

Reasonable and
necessary costs incurred by Western Skies Partnership to lease the space to a
new tenant.

 

Amount:  $ 0

 

Do not add any
amount for interest on damages, if any.

 

Do not include in your
answer any amount that you find Western Skies could have avoided through
reasonable efforts to mitigate its damages.

 

You are instruct
that a landlord has a duty to make reasonable efforts to mitigate damages when
the tenant breaches the lease and abandons the property.





[2]
787 S.W.2d 938, 939 (Tex. 1990).





[3]
Bacchus Industries, Inc. v. Frontier Mechanical
Contractors, 36 S.W.3d 579 (Tex.App.--El Paso
2000, no pet.).